USDC SCAN INDEX SHEET











SAN DIEGO MEDIC

AMERICAN MED SVC

RCM   6/30/97   9:10

3:97-CV-01222

*1*

*CMP.*

**LAW OFFICES OF JUDITH M. FINCH, State Bar No. 74389**
402 West Broadway, Suite 2500
San Diego, California 92101
(619) 233-1933
(619) 233-1944 (facsimile)

Attorneys for Plaintiff San Diego Medic Association



FILED

JUN 27 1997

SOUTHERN DISTRICT COURT
BY _____ CT OF CALIFORNIA
                                DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SAN DIEGO MEDIC ASSOCIATION, an employee labor organization, and MIKE MEOLI, an individual<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MEDICAL SERVICE OF SAN DIEGO 401 (K) PLAN; AMERICAN MEDICAL SERVICE OF SAN DIEGO, a limited partnership; STANLEY KAUFMAN, an individual; DAN LYNCH, an individual; JAMES KAUFMAN, an individual; JAMES BOSCOS, an individual; ERNIE BOSCOS, an individual; JAMES NAEFFEY, an individual; KAUFMAN/WARD SERVICE, INC., a California corporation, FOX & FOX, a California corporation, and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.: '97 CV 1222 E (RBB)<br><br>COMPLAINT FOR<br><br>1. DECLARATORY RELIEF 29 U.S.C. §1132 (a)(1)(B) [ERISA §502 (a)(1)(B)]<br><br>2. BREACH OF FIDUCIARY DUTY 29 U.S.C.§ §1104, 1105(a), 1109(a) [ERISA §§404, 405(a), 409(a)]<br><br>3. DEMAND FOR ACCOUNTING<br><br><br>[JURY TRIAL REQUESTED] |

///
///
///

1

PLAINTIFF SAN DIEGO MEDIC ASSOCIATION, an employee labor organization, and MIKE MEOLI, an individual (hereinafter "Plaintiffs") complain and alleges as follows:

## I.

## JURISDICTION

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C.§132 (e). Plaintiffs' claims arise under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, et seq. (hereinafter referred to as "ERISA"), particularly 29 U.S.C.§§1104,1105,1109,1132 [ERISA §§ 404(a), 405(a) and 409(a) and 502(a)]. Alternatively, Plaintiffs' claims arise in part under ERISA and in part under state law claims falling within the pendent jurisdiction of this Court and derived from a common nucleus of operative facts.

## II.

## VENUE

2. Venue is properly laid within the Southern District of California, pursuant to 29 U.S.C. § 1132(e)(2) [ERISA § 502(e)(2)] because the acts complained of have occurred within this District, a defendant resides and may be found in this District and the ends of justice so require.

## III.

## FICTITIOUS PARTIES

3. Plaintiffs sue DOES 1 through 100, inclusive, under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs damages as herein alleged were proximately caused by those Defendants. Each

2

reference in this complaint to "Defendant," "Defendants" or a specifically named Defendant refers also to all Defendants sued under fictitious names.

## IV.

## ALLEGATIONS COMMON TO ALL COUNTS

4. Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 3, inclusive, above as though set forth in full.

5. Plaintiff SAN DIEGO MEDIC ASSOCIATION (hereinafter "MEDICS") is, and at all times relevant, was an employee labor organization, engaged in representing its members for the purpose of collective bargaining with employers over wages, hours, working conditions and employee benefits, through insurance or otherwise, and in the administration of its collective bargaining agreements. The Association is the duly certified exclusive bargaining representative for its members and plan participants employed as Paramedics (EMT-P) and Paramedic Supervisors by AMS and as such is a labor organization representing employees and plan participants in an industry affecting commerce within the meaning of Sections 501(1) and (3) and 2(5) of the Labor Management Relations Act, 29 U.S.C. §§ 142(1) and (3) and 152(5) and Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. §185. The Association's principal place of business is in the City of San Diego, State of California.

6. Plaintiff MIKE MEOLI (hereinafter "MEOLI") is, and at all times relevant herein was, an individual residing in San Diego, California. At all times relevant to this action plaintiff MEOLI was a plan participant in the PLAN as hereinafter described.

7. Defendant "AMERICAN MEDICAL SERVICE OF SAN DIEGO 401(K) PLAN" (hereinafter the PLAN") is an employee 401(K) retirement system of AMS, which includes an employer-funded retention plan for the sole and exclusive benefit of covered employees and their families and is an employee benefit plan covered by ERISA.

8. Defendant AMERICAN MEDICAL SERVICE OF SAN DIEGO (hereinafter " AMS" ) is a California limited partnership with its principal place of business in San Diego,

3

California and is the PLAN sponsor and plan fiduciary of the PLAN.

9. Defendant STANLEY KAUFMAN, is and at all times relevant herein was, an individual residing in Fresno, California. Plaintiffs are informed and believe, and based thereon allege that at all times relevant to this action defendant STANLEY KAUFMAN was a named "Trustee" and a plan fiduciary of the PLAN.

10. Defendant DAN LYNCH, was at all times relevant herein, an individual residing in San Diego, California. He now resides in Fresno, California. Plaintiffs are informed and believe, and based hereon allege that at all times relevant to this action defendant DAN LYNCH was a named "Trustee" and plan fiduciary of the PLAN.

11. Defendant JAMES KAUFMAN, is and at all times relevant herein was, an individual residing in Fresno, California and an owner or principal of AMS. Plaintiffs are informed and believe, and based thereon allege that at all times relevant to this action defendant JAMES KAUFMAN was a plan fiduciary or co-fiduciary of the PLAN.

12. Defendant JAMES BOSKOS, is and at all times relevant herein was, an individual residing in La Jolla, California and an owner or principal of AMS. Plaintiffs are informed and believe and based thereon allege that at all times relevant to this action defendant JAMES BOSKOS was a plan fiduciary or co-fiduciary of the PLAN.

13. Defendant ERNIE BOSKOS, is and at all times relevant herein was, an individual residing in Fresno, California and an owner or principal of AMS. Plaintiffs are informed and believe and based thereon allege that at all times relevant to this action defendant ERNIE BOSKOS was a plan fiduciary or co-fiduciary of the PLAN.

14. Defendant JAMES NAEFFEY, is and at all times relevant herein was an owner or principal of AMS. Defendant JAMES NAEFFEY's residence is unknown. Plaintiffs are informed and believe and based thereon allege that at all times relevant to this action defendant JAMES NAEFFEY was a plan fiduciary or co-fiduciary of the PLAN.

15. Defendant KAUFMAN/WARD SERVICE, INC. (hereinafter "KAUFMAN/WARD"), is and at all times relevant herein was, a California corporation withi its principal place of business Fresno, California and is the general partner of AMS. Plaintiffs

4

are informed and believe and thereon allege that at all times relevant to this action defendant KAUFMAN/WARD was a plan fiduciary or co-fiduciary of the PLAN.

6. Defendant FOX & FOX is and at all times relevant herein was, a California corporation with its principal place of business in Fresno, California. FOX & FOX is a third party pension specialist for the PLAN, providing loan processing, tax and legal compliance and preparation of plan documents and amendments. Plaintiffs are informed and believe and based thereon allege that at all times relevant to this action defendant FOX & FOX was a plan fiduciary or co-fiduciary of the PLAN.

17. The name of the person or entity designated as "Plan Administrator" under the PLAN is presently unknown to Plaintiffs, and Plaintiffs hereby designate the Plan Administrator as DOE I.

## FACTUAL ALLEGATIONS

18. Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 17, inclusive, above as though set forth in full.

19. AMS contracted with the City of San Diego for the provision of ambulance and paramedic services in an Agreement filed on March 29, 1993 with the Office of the City Clerk, San Diego, California, Document #RR281705 (herein "SD/AMS Contract"). AMS then contracted with Plaintiff MEDICS for provision of paramedic services in Collective Bargaining Agreements ratified on November 6, 1994 and May 22, 1996. (herein " CBA Agreements"). The CBA Agreements provided that in exchange for the rendering of paramedic services, the Paramedics and Paramedic Supervisors would be compensated and entitled to benefits in accordance with the terms of the CBA Agreements. The CBA Agreements include the PLAN as a part of the compensation and employee benefits to which the Paramedics and Paramedic Supervisors are entitled.

20. Plaintiffs have faithfully and fully performed the terms of the CBA Agreements in providing paramedic services to AMS and the City of San Diego. Defendants, however, have

5

unlawfully, willfully and repeatedly breached their fiduciary duties or duties of trust relating to the PLAN and have caused AMS to breach its contractual obligations under the CBA Agreements.

21. To address AMS' breach of its contractual obligations, Plaintiff MEDICS has filed a complaint for violation of labor agreement under 29 U.S.C. Section 185 in the United States District Court, Southern District of California entitled San Diego Medic Association,v. American Medical Services of San Diego, et al, , Case No. 96 1544BTM CA. A true and correct copy of the Complaint is attached as Exhibit "A" hereto and included herein by reference. The Complaint seeks enforcement of an arbitrated Settlement Agreement, a true and correct copy of which is attached as Exhibit "B" hereto and included herein by reference. The Court has referred the matter to arbitration.

22. AMS sponsored the PLAN for the Paramedics and Paramedic Supervisors who are represented by Plaintiff MEDICS. Plaintiffs are informed and believe and based thereon allege that for the last four years, Defendants herein-- the owners and principals of AMS and the "Trustees", "Plan Administrators" and "Pension Specialists" as designated by the owners and principals of AMS-- exercised or possessed the authority, control, power or responsibility to set policy, make interpretations and establish practices and procedures related to the PLAN and the management, administration or disposition of its assets. Plaintiffs are informed and believe and based thereon allege that other Defendants, even though not necessarily formally designated, nonetheless possessed or exercised the requisite authority or control and discretion over the management and administration of the PLAN. . By virtue of these actions, Defendants are "Plan Fiduciaries or "Co-fiduciaries" of the PLAN within the meaning of ERISA.

23. As PLAN fiduciaries or co-fiduciaries, Defendants have willfully, unlawfully and repeatedly breached their fiduciary duties under the PLAN. Plaintiffs are informed and believe and based thereon allege that Defendants have violated the terms of the PLAN and the ERISA laws governing PLAN management and administration and fiduciary responsibility (i) by failing to act solely in the interests of the plan participants, (ii) by affirmatively misleading plan

6

participants with respect to matters concerning plan benefits, (iii) by not acting in accordance with the PLAN documents and instruments, (iv) by failing to remedy the violations after grievances were filed by participants, (v) and by failing to monitor their co-fiduciaries.

24. Defendants have wilfully, unlawfully and repeatedly failed to make employer matching contributions; Defendants have willfully, unlawfully and repeatedly directed management to misrepresent to employees that funding would take place in exchange for forbearance; and Defendants have willfully and repeatedly falsely committed to bring the contributions current, with interest, at all times thereafter violating the terms of each new commitment. Plaintiffs are informed and believe and based thereon allege that Defendants have done this with the purpose and intention of using these employee funds for their own purposes or for the purposes of third parties in breach of their fiduciary duties and duties of trust to act solely in the interest of the plan participants.

25. Plaintiffs are informed and believe and based thereon allege that Defendants have willfully, repeatedly and unlawfully breached their fiduciary duties and duties of trust within the meaning of ERISA by directing the management of AMS to deduct employee contributions from employee paychecks with the purpose and intention of using these employee funds for their own purposes or for the purposes of third parties in breach of their fiduciary duties and duties of trust to act solely in the interest of the plan participants. Defendants have affirmatively mislead plan participants by promising restitution in exchange for forbearance to delay or avoid payment.

26. Plaintiffs are informed and believe and based thereon allege that Defendants have willfully, repeatedly and unlawfully breached their fiduciary duties and duties of trust within the meaning of ERISA by using employee loan payments for their own purposes or for the purposes of third parties in breach of their fiduciary obligations and duties of trust. The Paramedics and Paramedic Supervisors represented by Plaintiff MEDIC were allowed to borrow money from their 401(K) accounts under the PLAN, with the requirement that payments on these loans be deducted from their paychecks and applied to their 401(K) accounts to reduce the loan balances outstanding. Plaintiffs are further informed and believe

7

and based thereon allege that, at the direction of the owners and principals of AMS, Defendants, have deducted, or have caused to have deducted, these loan payments from the employee PLAN participants' paychecks, and have not applied the payments to the loan balances.

27. For two years, Defendants have refused the oral requests of Plaintiff MEOLI, on his own behalf and on behalf of the individual PLAN participants represented by Plaintiff MEDICS, for copies of the PLAN and all amendments, in violation of the Defendants' fiduciary and disclosure duties. Plaintiff MEOLI finally submitted a written demand on June 7, 1997 and is still awaiting a copy of the PLAN and amendments.

28. Plaintiffs are informed and believe and based thereon allege that Defendants have failed to "bond" their obligations under the Plan in violation of ERISA § 412 (a).

29. Plaintiffs are informed and believe and based thereon allege (i) that as early as January 1994, contributions were delinquent by approximately five months; (ii) that in April 1994, contributions were delinquent again; (iii) that in December 1994, after three written notices from Plaintiff (including a warning that PLAN delinquencies would be reported to the PWBA and the National Labor Relations Board), Defendant LYNCH committed on behalf of the owners and principals of AMS who are Defendants herein to bring all 401(K) accounts current by January 16, 1995. [In his letter dated December 6, 1994, a true and correct copy of which is attached hereto as Exhibit "C" and included herein by reference, Plaintiff MEOLI outlined the PLAN delinquencies and requested a January 16, 1995 deadline. In Defendant LYNCH's responsive letter to Plaintiff MEOLI dated December 6, 1994, a true and correct copy of which is attached hereto as Exhibit "D" and included herein by reference, Defendant LYNCH agreed to "attempt" to meet the January 16, 1995 deadline.]

30. On January 25, 1995, Plaintiff MEDICS, representing all the PLAN participants, filed a Grievance for Unfair Labor Practices and Breach of Contract with defendant LYNCH and AMS. A true and correct copy of the grievance letter is attached hereto and included herein by reference as Exhibit "E".

31. On May 3, 1995, after a labor/management meeting held on April 26, 1995 between

**8**

Plaintiff MEDICS and AMS, Defendant LYNCH wrote to Plaintiff MEOLI as president of Plaintiff MEDICS. In this letter defendant LYNCH contended that he could not make commitments to correct deficiencies under the PLAN without getting direction from the owners and principals of AMS, who had the discretionary power to set policies, make interpretations and establish practices and procedures for the management and administration of the PLAN. A true and correct copy of this letter is attached hereto and included herein by reference as Exhibit "F".

32. On May 6, 1995, Plaintiff MEOLI responded to Defendant LYNCH's May 3 letter, confirming Defendant LYNCH's agreement in the April 26 meeting to bring the delinquencies current within thirty days and to remit them in chronological order. In his letter Plaintiff MEOLI accused Defendants of backing out of Defendant LYNCH's commitment and of being dishonest, inconsistent with their duties of loyalty and trust. See letter of Plaintiff MEOLI dated May 6, 1995, a true and correct copy of which is attached hereto and included herein by reference as Exhibit "G".

33. On May 8, 1995, Olins, Foerster & Hayes, attorneys for Plaintiff MEDICS served written notice on AMS and its general manager, Defendant LYNCH, of its intent to appeal the 401(K) grievance to arbitration. A true and correct copy of the letter of Douglas F. Olins, dated May 8, 1995 is attached hereto and included herein by reference as Exhibit "H".

34. Delinquencies have continued. Defendants have repeatedly made promises of payment, culminating in the Settlement Agreement referenced in paragraph 21, hereinabove and attached hereto as Exhibit "B", which provides for full payment of delinquent contributions and interest. Plaintiffs are informed and believe and based thereon allege that the owners and principals of AMS who are Defendants herein knew the Settlement Agreement could not be honored, but falsely, materially and intentionally misled Plaintiffs to sign the agreement. Violating their fiduciary duties of loyalty and trust and acting for their own purposes or for the purposes of third parties, Defendants induced Plaintiff MEDICS' to drop the unfair labor practice charge referenced in paragraphs 35 in exchange for a commitment to bring the delinquencies current. Plaintiff MEDICS, acting in good faith, dropped its charge and the

9

owners and principals of AMS who are Defendants herein then failed to honor the Settlement Agreement, as they have violated all prior commitments relating to delinquencies under the PLAN.

35. Plaintiff MEDICS and individual plan participants it represents have filed numerous complaints with The United States Department of Labor, Pension and Welfare Benefits ("PWBA"), including a complaint resulting in the charge referenced in paragraph 30 and 34 hereinabove. Plaintiffs are informed and believe and based thereon allege that in 1994, PWBA demanded that the owners and principals of AMS who are Defendants herein cause the management of AMS to bring current approximately $257,000 in delinquent contributions to the PLAN.

36. In June, 1996, Stephen V. Prichard of the the Los Angeles Regional Office of PWBA commenced an investigation of the PLAN and reached a determination on March 21, 1997, that $404,000 in employer matching contributions were delinquent and that $10,507 in employee contributions were delinquent. See Declaration of Stephen V. Prichard dated April 30, 1997, a true and correct copy of which is attached hereto as Exhibit "I" and included herein by reference.

37. Plaintiffs are informed and believe and based thereon allege that an additional approximately $200,000 in employer contributions are delinquent in the employer-funded retention section of the PLAN.

38. Plaintiffs are informed and believe and based thereon allege that the owners and principals of AMS who are Defendants herein have established a course of conduct in their business activities where fiduciary duties and duties of loyalty and trust are breached. In addition to the breaches of these duties under ERISA law, Plaintiffs are informed and believe and based thereon allege that the owners and principals of AMS who are Defendants herein have also directed managment of AMS to withhold Social Security payments from employee checks but to use the funds for their own purposes or the purposes of third parties, rather than make the legally required Social Security payments. Plaintiff MEDICS is presently conducting an audit of the non-payments. Plaintiffs are informed and believe and based thereon allege

**10**

that the owners and principals of AMS who are Defendants herein have also breached their fiduciary duties and duties of trust by failing to pay the plan administrative fees on health insurance, resulting in the denial of benefits to employees under the health plan. Plaintiffs are futher informed and believe and based thereon allege that the owners and principals of AMS who are Defendants herein have, while owing a duty of trust to the users of AMS ambulance services, have failed to appropriately return insurance reimbursements.

39. The SD/AMS Contract expires June 30, 1997. PLAINTIFF is informed and has reason to believe that the owners and principals of AMS who are Defendants herein will cause AMS to avoid payment of these delinquent contributions when the SD/AMS Contract expires resulting in economic losses to Plaintiffs herein including the amount of delinquent contributions in excess of $500,000, interest, penalties and attorneys' fees.

40. Plaintiffs allege that there is no exhaustion of administrative remedies requirement for breach of fiduciary duty under ERISA and that any administrative remedy requirement in the PLAN documents would not apply to this case. Plaintiffs further allege that since Plaintiffs have been unable to obtain from any Defendant or other source a copy of the PLAN, Plaintiffs are excused from any exhaustion requirement under ERISA's "futility" exception.

**FIRST CLAIM FOR RELIEF**

**DECLARATORY RELIEF**

**Action for Recovery of Benefits, to Enforce Rights**

**and to Clarify Rights to Future Benefits under the Plan**

**Pursuant to 29 U.S.C. § 1132 (A)(1)(b) [ERISA §502 (a)(1)(B)]**

**Against all Defendants**

41. Plaintiffs hereby incorporate by reference the paragraphs 1 through 40 inclusive, above, as though fully set forth herein.

42. Plaintiffs desire the Court to make a judicial determination as to the Defendants as Plan Fiduciaries or Co-fiduciaries within the meaning of ERISA. 29 U.S.C. §1132 (a)(1)(B) [ERISA §502 (a)(1)(B)]. Such a determination is necessary and appropriate at this time in

**11**

order that Plaintiffs may proceed under the law. There are no administrative remedies available to Plaintiffs which have not been exhausted or for which the "futility" exception under ERISA does not apply.

43. A timely determination by this court is urgent because the AMS/SD Contract will expire June 30, 1997 and Plaintiffs have reason to believe the owners and principals of AMS who are Defendants herein will attempt to avoid payment of the delinquent contributions. The determination that Defendants are Plan Fiduciaries or Co-fiduciaries within the meaning of ERISA will clarify which Defendants are exposed to direct and personal liability for breaches of fiduciary obligations and duties of trust.

44. Plaintiff will suffer irreparable and lasting injury unless declaratory relief is granted.

45. 29 U.S.C. §1132 (g)(1) [ERISA § 502 (g)] entitles a Plaintiff who prevails in obtaining any of the benefit for which the Plaintiff brought suit to a presumptive award of a reasonable attorneys' fee and costs of action under the remedial purposes and policies of ERISA.

46. As a result of the actions and failings of Defendants, and each of them, Plaintiffs have retained the services of legal counsel and have necessarily incurred attorneys' fees and costs in prosecuting this action. Further Plaintiffs anticipate incurring additional attorneys' fees and costs in hereafter pursuing this action, all in a final amount which is currently unknown. Plaintiffs therefore request an award of reasonable attorneys' fees and costs in an amount to be determined at the time of trial.

## SECOND CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY
### Pursuant to 29 U.S.C. §§ 1104, 1004(a) [ERISA §§ 404,404(a)]
### 29 U.S.C. § 1105 (a) [ERISA § 405 (a)] and 29 U.S.C. § 1109 (a) [ERISA § 409(a)]
### Against all Defendants

47. Plaintiffs hereby incorporate by reference the paragraphs 1 through 46 inclusive, above, as though fully set forth herein.

48. Plaintiffs are informed and believe and based thereon allege that Defendants

12

knowingly, willfully and repeatedly failed to make employer contributions to the PLAN, wrongfully took contributions from employees and failed to add them to employees' accounts in the PLAN fund, wrongfully took payments on PLAN loans from employees and failed to credit the payments to employees' accounts in the PLAN fund, wrongfully failed to bond the PLAN against losses occasioned by such acts and misrepresented to employees and falsely induced them into forbearance by making promises and agreements that Defendants did not intend to keep.

49. By such acts, Defendants have breached their fiduciary obligations and duties of trust under the Plan (i) by failing to act solely in the interests of the plan participants, (ii) by affirmatively misleading plan participants with respect to matters concerning plan benefits,(iii) by not acting in accordance with the PLAN documents and instruments, (iv) by failing to remedy the violations after grievances were filed by participants and (v) by failing to monitor co-fiduciaries. By such acts Defendants have created personal and direct liability for themselves under ERISA, section 409(a) --which provides that personal liability attaches to a Plan Fiduciary within the meaning of ERISA, who breaches any of the responsibilities, obligations or duties imposed on him by ERISA.

50. 29 U.S.C. §1132 (g)(1) [ERISA § 502 (g)] entitles a Plaintiff who prevails in obtaining any of the benefit for which the Plaintiff brought suit to a presumptive award of a reasonable attorneys' fee and costs of action under the remedial purposes and policies of ERISA.

51. As a result of the actions and failings of Defendants, and each of them, Plaintiffs have retained the services of legal counsel and have necessarily incurred attorneys' fees and costs in prosecuting this action. Further Plaintiffs anticipate incurring additional attorneys' fees and costs in hereafter pursuing this action, all in a final amount which is currently unknown. Plaintiffs therefore request an award of reasonable attorneys' fees and costs in an amount to be determined at the time of trial.

/ / /

/ / /

## THIRD CLAIM FOR RELIEF

## DEMAND FOR AN ACCOUNTING

### Against all Defendants

52. Plaintiff hereby incorporates by reference the paragraphs 1 through 51 inclusive, above, as though fully set forth herein.

53. An actual controversy exists between Plaintiffs and Defendants arising from the delinquencies as to the amount of contributions delinquent and the appropriate application of current contributions to the PLAN. Plaintiffs contend that approximately $500,000 or more in delinquent contributions is due plus interest and penalties. Defendants contend that the results of the audit of the PWBA are incorrect.

54. Plaintiffs desire the Court to order an accounting by a neutral examiner appointed by the Court for the purpose of ascertaining an accurate account of delinquent contributions, interest and penalties.

55. 29 U.S.C. §1132 (g)(1) [ERISA 502(g)] entitles a Plaintiff who prevails in obtaining any of the benefit for which the Plaintiff brought suit to a presumptive award of a reasonable attorneys' fee and costs of action under the remedial purposes and policies of ERISA.

56. As a result of the actions and failings of Defendants, and each of them, Plaintiffs have retained the services of legal counsel and have necessarily incurred attorneys' fees and costs in prosecuting this action. Further Plaintiffs anticipate incurring additional attorneys' fees and costs in hereafter pursuing this action, all in a final amount which is currently unknown. Plaintiffs therefore request an award of reasonable attorneys' fees and costs in an amount to be determined at the time of trial.

/ / /

/ / /

/ / /

**14**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and requests relief as herein provided:

**ON THE FIRST CLAIM AGAINST ALL DEFENDANTS**

**DETERMINATION OF PLAN FIDUCIARIES OR CO-FIDUCIARIES**

1. For a declaration that Defendants are "Plan Fiduciaries" within the meaning of ERISA;

2. For reasonable attorneys' fees;

3. For costs incurred; and,

4. For such other and further relief as the Court deems appropriate.

**ON THE SECOND CLAIM AGAINST ALL DEFENDANTS**

**BREACH OF FIDUCIARY DUTY**

1. For a determination that Defendants declared to be Plan Fiduciaries or Co-fiduciaries within the meaning of ERISA have breached their fiduciary duties and violated federal law under the requirements of ERISA giving rise to direct personal liability under section 409(a).

2. For reasonable attorneys' fees;

3. For costs incurred;

4. For such other and further relief as the Court deems appropriate.

**ON THE THIRD CLAIM AGAINST ALL DEFENDANTS**

**DEMAND FOR ACCOUNTING**

1. For an accounting of delinquent contributions, interest and penalties owing prepared by a Court appointed neutral third party;

2. For reasonable attorneys fees;

3. For costs incurred;

4. For such other and further relief as the Court deems appropriate.

15

Dated:   June 27, 1997                              **LAW OFFICES OF JUDITH M. FINCH**


Judith M. Finch
Attorneys for Plaintiffs
SAN DIEGO MEDIC ASSOCIATION


## DEMAND FOR JURY TRIAL

Plaintiffs  hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.


Dated:   June 27, 1997                              **LAW OFFICES OF JUDITH M. FINCH**


Judith M. Finch
Attorneys for Plaintiffs
SAN DIEGO MEDIC ASSOCIATION


16

Dennis J. Hayes, Esq. Bar No. 123576
Barrett J. Foerster, Esq.  Bar No. 46712
Olins, Foerster & Hayes
Attorneys at Law
2214 Second Avenue
San Diego, California 92101
Telephone: (619) 238-1601
Facsimile: (619) 238-1613

Attorney for: San Diego Medic Association

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO MEDIC ASSOCIATION,<br><br>    Plaintiff,<br><br>vs.<br><br>AMERICAN MEDICAL SERVICES OF SAN DIEGO, a California limited partnership, also known as AMERICAN MEDICAL SERVICES OF SAN DIEGO, INC., doing business as AMERICAN MEDICAL SERVICES, and KAUFMAN/WARD SERVICE INC., a California Corporation,<br><br>    Defendants. | Case No. 96 1544BTM CA<br><br>SECOND AMENDED COMPLAINT FOR VIOLATION OF LABOR AGREEMENT UNDER 29 U.S.C. SECTION 185<br><br>[29 U.S.C. Section 185] |

Plaintiff, SAN DIEGO MEDIC ASSOCIATION (hereinafter "Plaintiff" or "the Association") alleges as follows:

FIRST CAUSE OF ACTION

1.    This action arises under, and jurisdiction is conferred on this Court by virtue of Section 301 of the Labor Management Relations Act of 1947, as amended, and 29 U.S.C. Section 185.

EXHIBIT A

1

2.    Plaintiff is, and at all times relevant to this action, was a labor organization, engaged in representing its members for the purpose of collective bargaining with employers over wages, hours, and working conditions and in the administration of said collective bargaining agreements. The Association is the duly certified exclusive bargaining representative for its members employed as Paramedics (EMT-P) and Paramedic Supervisors by American Medical Services of San Diego, a California Limited Partnership, also known as American Medical Services, Inc., and as such is a labor organization representing employees in an industry affecting commerce within the meaning of Sections 501(1) and (3) and 2(5) of the Labor Management Relations Act, 29 U.S.C. Sections 142(1) and (3) and 152(5) and Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. Section 185. The Association's principal place of business is in the City of San Diego, State of California.

3.    Defendant, American Medical Services of San Diego, a California Limited Partnership (hereinafter "AMS"), is and at all time mentioned herein was, a limited partnership conducting business throughout the County of San Diego, State of California, the site of the instant dispute. Said Defendant is also known as American Medical Services of San Diego, Inc., doing business as American Medical Services, and is engaged in the business of providing ambulance services and paramedic care in said County and State and is an employer engaged in a business affecting commerce within the meaning of 29 U.S.C. Sections 152(2) and (7).

4.    The general partner of American Medical Services of San Diego, a California Limited Partnership, is Kaufman/Ward Service, Inc., (hereinafter "Kaufman/Ward") which is and was at all times herein mentioned a corporation conducting business throughout the County of San Diego, State of California, the site of the instant dispute. At all times herein mentioned, said defendant was and is an employer engaged in a business affecting commerce within the meaning of

2

EXHIBIT A

29 U.S.C. Sections 152(2) and (7).

5.    At all times herein mentioned, each of said Defendants named herein was the agent, servant and employee of each of the other named Defendants, and at all times was acting within the course and scope of the authority of said other named defendants herein.

6.    Plaintiff and Defendant AMS entered into a written collective bargaining agreement (hereinafter "CBA-1"), the duration of which was from January 1, 1994 through December 31, 1995.  This CBA-1 was amended and ratified by the members of the Association on October 28, 1994.  A true and correct copy of the CBA-1 is attached as Exhibit "A" hereto and is incorporated herein by reference.  Section 2.08.D. of the CBA-1 provides, in part, that all employer and employee contributions to the American Medical Services 401(k) Plan (hereafter "401(k) Plan" or "Plan") shall be made within sixty (60) days of the "pay date" which is the date the employer withheld or received the employee contributions to the Plan.

7.    On January 25, 1995, the Plaintiff filed a grievance claiming that Defendant, AMS violated the terms of the CBA-1 by not making timely contributions to its employees' 401(k) Plan as required by Section 2.08.D. Plaintiff and Defendants, entered into a Settlement Agreement executed on February 7, 1996, a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference.  Included in the terms of this Settlement Agreement are the following provisions:  (A) That within ninety days of February 7, 1996, Defendants, would remit all delinquent 401(k) contributions to all employee accounts with interest on all late payments as set forth in said Agreement; (B) that all future late remittances to the employee 401(k) accounts, including those which have occurred in 1996, would earn interest thereon which would accrue at the monthly compounded rate of two percent (2%) per month; and (C) Defendants expressly waived its right to utilize arbitration or court

3

EXHIBIT A

proceedings to contest its future late 401(k) obligations except as to whether or not its future payments were late.

8.    During the period following the execution of said Settlement Agreement, to the present time, Defendants have continually breached the CBA-1 and Settlement Agreement by having failed to pay within ninety (90) days of February 7, 1996 all delinquent contributions to the employee accounts with interest thereon as set forth in the Agreement and by failing to make all of the employer and employee contributions to the 401(k) Plan within sixty (60) days of the date of receipt of the employee contributions.   Defendants have further breached the Settlement Agreement by failing to pay into the Plan the interest accruing on said delinquent contributions at the rate of two percent (2%) per month.

9.    On or about August 7, 1996, the Regional Director of the National Labor Relations Board sent Plaintiff a letter rejecting further proceedings on the charge that Defendant AMS violated Section 8 of the National Labor Relations Act, as amended.   Said rejection was because "...the matter now involves noncompliance with an arbitral award, which is subject to judicial enforcement..." as a result of the execution of the Settlement Agreement entered into pursuant to the arbitration proceedings.  A copy of said letter is attached hereto as Exhibit "C" and is incorporated herein by reference.

10.    By virtue of said arbitration proceedings and the Settlement Agreement arrived at pursuant thereto, and by virtue of the National Labor Relations Board's rejection of further proceedings on the aforesaid charge, Plaintiff has exhausted its administrative remedies.  Defendants' continued violations of the terms of the CBA and Settlement Agreement entered into pursuant to an arbitration proceeding, leaves Plaintiff with no recourse but to seek injunctive orders from the Court compelling Defendants to make the employer and employee contributions to the 401(k) Plan within sixty days of receipt of the employee

4

EXHIBIT A

proceedings to contest its future late 401(k) obligations except as to whether or not its future payments were late.

8.    During the period following the execution of said Settlement Agreement, to the present time, Defendants have continually breached the CBA-1 and Settlement Agreement by having failed to pay within ninety (90) days of February 7, 1996 all delinquent contributions to the employee accounts with interest thereon as set forth in the Agreement and by failing to make all of the employer and employee contributions to the 401(k) Plan within sixty (60) days of the date of receipt of the employee contributions.    Defendants have further breached the Settlement Agreement by failing to pay into the Plan the interest accruing on said delinquent contributions at the rate of two percent (2%) per month.

9.    On or about August 7, 1996, the Regional Director of the National Labor Relations Board sent Plaintiff a letter rejecting further proceedings on the charge that Defendant AMS violated Section 8 of the National Labor Relations Act, as amended.    Said rejection was because "...the matter now involves noncompliance with an arbitral award, which is subject to judicial enforcement..." as a result of the execution of the Settlement Agreement entered into pursuant to the arbitration proceedings.  A copy of said letter is attached hereto as Exhibit "C" and is incorporated herein by reference.

10.    By virtue of said arbitration proceedings and the Settlement Agreement arrived at pursuant thereto, and by virtue of the National Labor Relations Board's rejection of further proceedings on the aforesaid charge, Plaintiff has exhausted its administrative remedies.  Defendants' continued violations of the terms of the CBA and Settlement Agreement entered into pursuant to an arbitration proceeding, leaves Plaintiff with no recourse but to seek injunctive orders from the Court compelling Defendants to make the employer and employee contributions to the 401(k) Plan within sixty days of receipt of the employee

4

EXHIBIT _A_

contributions, and to pay to the Plan all delinquent contributions plus interest thereon at the rate of two percent (2%) per month, compounded monthly.

11.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff in that the failure of Defendants to pay the contributions in a timely manner will impair Plaintiff's relationship with its members who rely on Plaintiff to protect their interests under the CBA-1. Further, said conduct impairs the efficacy of the CBA-1, of which Plaintiff is a party, if its provisions can be so easily ignored.

12.    Plaintiff has no adequate remedy at law for the injuries being suffered in that Plaintiff will be forced to institute a multiplicity of suits to obtain adequate compensation for its members.

13.    Defendants' aforesaid continued violations are acts taken in bad faith, in that Defendants' continued refusal to make timely contributions to the Plan, following arbitration proceedings, is totally unjustified and is a complete disregard of their clear duty under the CBA-1. Therefore, an award of reasonable attorney's fees and costs is necessary to compensate the Association for the expense incurred in compelling Defendants to meet their clear contractual obligations arising under the CBA-1 and Settlement Agreement.

**SECOND CAUSE OF ACTION**

14.    Plaintiff incorporates herein by reference as though set forth in full Paragraphs 1 through 6 and Paragraph 9 of the First Cause of Action.

15.    On June 3, 1996, Plaintiff and Defendant AMS executed a new written Collective Bargaining Agreement (hereinafter "CBA-2"), the duration of which was from January 1, 1996 through December 31, 1997. Said CBA-2 was ratified by Plaintiff's members on or about May 22, 1996. A true and correct copy of said CBA-2 is attached hereto as Exhibit "D", and is incorporated herein by reference as though set forth in full. Section 2.08.D of the CBA-2 provides in part that all employer and employee contributions to the American Medical Services

EXHIBIT A

401(k) Plan shall be made within thirty (30) days of the "pay date" which is the date that the employer withheld or received the employee contributions to the Plan.

16. During the period that said CBA-2 has been in effect, Defendants have continually breached its terms by failing to make all of the employer and employee contributions to the 401(k) Plan within thirty (30) days of the receipt of the employee contributions plus interest thereon pursuant to the terms of the CBA-2.

17. By virtue of the National Labor Relations Board's rejection of further proceedings on the aforesaid charge referred to in Paragraph 7 herein, Plaintiff has exhausted its administrative remedies. Further proceedings concerning the breach of terms of the CBA-2 would be futile. Defendants' continued violations of the terms of the CBA-2 leaves Plaintiff with no recourse but to seek injunctive orders from the Court compelling Defendants to make the employer and employee contributions to the 401(k) Plan, within thirty (30) days of receipt of the employee contributions, and to pay to the Plan all delinquent contributions plus interest thereon at the rate of two percent (2%) per month, compounded monthly.

18. Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff in that the failure of Defendants to pay the contributions in a timely manner will impair Plaintiff's relationship with its members who rely on Plaintiff to protect their interests under the CBA-2. Further, said conduct impairs the efficacy of the CBA-2, of which Plaintiff is a party, if its provisions can be so easily ignored.

19. Plaintiff has no adequate remedy at law for the injuries being suffered in that Plaintiff will be forced to institute a multiplicity of suits to obtain adequate compensation for its members.

20. Defendants' aforesaid continued violations are acts taken in bad faith, in that Defendants' continued refusal to make timely contributions to the Plan,

6

EXHIBIT A

following arbitration proceedings, is totally unjustified and is a complete disregard of their clear duty under the CBA-2. Therefore, an award of reasonable attorney's fees and costs is necessary to compensate the Association for the expense incurred in compelling Defendants to meet their clear contractual obligations arising under the CBA-2.

WHEREFORE, Plaintiff prays that:

1.    First Cause of Action -- The Court issue injunctive orders to enforce the terms of the aforesaid Settlement Agreement and CBA-1 by compelling Defendants to hereafter make all employer and employee contributions to the American Medical Services' 401(k) Plan within sixty (60) days of receipt or of withholding of the employee contributions to said 401(k) Plan, to pay all delinquent contributions to the Plan forthwith, and pay the interest accruing on such delinquent contributions at the rate of two percent (2%) per month;

2.    Second Cause of Action -- In the alternative, that the Court issue injunctive orders to enforce the CBA-2 by compelling Defendants to hereafter make all employer and employee contributions to the American Medical Services' 401(k) Plan within thirty (30) days of receipt or of withholding of the employee contributions to said 401(k) Plan, to pay all delinquent contributions to the Plan forthwith, and pay the interest accruing on such delinquent contributions at the rate of two percent (2%) per month;

3.    By virtue of the First and/or Second Causes of Action herein, that Defendants pay Plaintiff's reasonable attorney's fees and costs necessarily incurred in bringing this action; and

///

///

///

///

///

7

EXHIBIT A

4.    Such other and further relief be granted as the Court may deem just and proper.

DATED: May 1, 1997          OLINS, FOERSTER & HAYES


BY:_____ s/ BJF _____
          BARRETT J. FOERSTER
          Attorneys for San Diego
          Medic Association

8

EXHIBIT A

Case 3:97-cv-01222-BTM-LSP     Document 1     Filed 06/27/97     PageID.28     Page 28 of 55

FROM : San Diego Medic Ass    PHONE NO. : 6196899911    Jul. 31 1996 10:28PM P01



# SETTLEMENT AGREEMENT

This Agreement is entered into by and between San Diego Medic Association ("Association") and American Medical Services ("American") with respect to the following:

A.     The Association has filed a grievance claiming that American has violated its collective bargaining agreement ("Agreement") with the Association by not making timely contributions to its employees 401(K) accounts, in violation of Section 2.08 of the Agreement.

B.     American Arbitration Association ("AAA") has scheduled an arbitration on said grievance on February 8, 1996, Case No. 73 300 00022 95.

C.     Both American and the Association desire to settle the pending grievance without arbitration.

NOW, THEREFORE, in consideration of the promises and agreements hereinafter set forth it is hereby agreed by and between the parties as follows:

1.0     ASSOCIATION'S OBLIGATIONS

1.1     The Association will withdraw its pending grievance and arbitration regarding the 401(K) with AAA.

2.0     AMERICAN'S OBLIGATIONS

2.1     Within ninety days of February 7, 1996, American shall remit all delinquent 401(K) contributions to all employees accounts with interest on all late payments as follows:

A.     For those late remittances that occurred in 1993 and/or 1994, interest shall accrue at the monthly compounded rate of one percent (1%) per month.

1

EXHIBIT B

FROM : San Diego Medic Assn   PHONE NO. : 6196899911    Jul. 31 1996 10:28PM  P02

b.    For those late remittances that occurred in 1995 and/or 1996, interest shall accrue at the monthly compounded rate of two percent (2%) per month.

c.    For all future late remittances interest shall accrue at the monthly compounded rate of two percent (2%) per month.

2.2  In the event that future 401(K) payments by American are remitted beyond the limits set forth in the current Agreement, American will pay interest on said late remittances as set forth in Sections 2.1 b and c above.  American expressly waives its right to utilize arbitration or court proceedings to contest its future late 401(K) obligations except as to whether or not its future payments were late.

## 3.0  ASSOCIATIONS AND AMERICANS OBLIGATIONS

3.1  The Association and American shall share equally in the cancellation fee of the Arbitration scheduled for February 8, 1996.

## 4.0  GENERAL PROVISIONS

4.1  This Agreement has been reviewed by the parties hereto and the respective attorneys and the parties have had a full opportunity to negotiate the contents hereof.  The parties expressly waive any common law or statutory rule of construction that ambiguities should be construed against the drafter of the Agreement.

4.2  This Agreement contains the entire agreement between American and the Association and there have been no other promises, inducements or agreements not expressed in this Agreement.

4.3  All provisions of this Agreement are contractual in nature and are not mere recitals.

///
///
///

2

EXHIBIT B

FROM : San Diego Medic Asso          PHONE NO. 55 6196899911          Jul. 31 1996 10:29PM P03

SAN DIEGO MEDIC ASSOCIATION

DATED: 2/7/96

BY: MICHAEL MEOLI
      President

AMERICAN MEDICAL SERVICES

DATED: 2/7/96

BY: BOB MAYORGA
      Director of Human Resources

3

EXHIBIT B



# SAN DIEGO MEDIC ASSOCIATION

*"Dedicated to Complete Community Care"*

December 6, 1994

Dan Lynch
General Manager, AMS
1304 38th St.
San Diego, CA. 92104

Dear Dan:

We were hoping that we would never have to write a letter to you like this. Unfortunately, you have not responded to my letter of 11/9/94, which informed you of the Company practice of making late 401(k) contributions that continue to flagrantly violate federal laws and our labor agreement. You may remember that you were first made aware of the problem at the 8/31/94 Labor/Management meeting where you assured us that you would "look into it and take care of it immediately." Regardless of your continued verbal assurances, the 401(k) contributions have remained in default by about four (4) months for more than half a year.

As of this date, all 401(k) accounts are in default as follows (according to Great West):

- Employee contributions:     paid through July 22, 1994
- Employer match:             paid through June 24, 1994
- Money Purchase:             paid through July 22, 1994
- Employee loan payments:     paid through June 30, 1994

Therefore, I must hereby notify you of our intention to report this matter to the National Labor Relations Board and/or the Department of Labor unless all 401(k) contributions are made current (with interest) by January 16, 1995. In addition to making all contributions current within thirty (30) days, I am also requesting that you give us a clear written plan on how you intend to assure that 401(k) contributions will never be floated again.

I am sorry to have to take this position, but we believe that we have been more than understanding of the Company's extenuating circumstances and that we have no remaining options on this important matter. Please give a written response on this issue. Thank you.

Sincerely:

Michael Meoli
SDMA President

cc:     E-Board
        Howard Rayon

EXHIBIT _C_

SDMA   P.O. BOX 500142   San Diego, CA   92150-0142   (619) 689-9911



Medical Services

December 8, 1994

Michael Meoli, President
San Diego Medic Association
P.o. Box 500142
San Diego, CA 92150-0142

Dear Mike,

I have received your letter regarding the 401 (K) contributions
and our delinquency in keeping the plan up to date.

I want to first apologize to you for not responding to your
November 9, 1994 letter.  As you know, we continue to dispute
with the city and this is very time consuming.  Unfortunately,
your letter was over looked.

I want to assure you that I am making every effort to remedy this
problem as quickly as possible.  I understand your January 16,
1994 deadline and will attempt to meet it.  I will notify you if
any problems arise.

I appreciate your patience and understanding in this matter.

Sincerely,

Daniel J. Lynch
General Manager

EXHIBIT _D_

FROM : San Diego Medic Associa ⬤   PHONE NO. : 6196899911      ⬤n. 25 1995 10:49PM  P02



# SAN DIEGO MEDIC ASSOCIATION

*"Dedicated to Complete Community Care"*

January 25, 1995

Dan Lynch
General Manager,
American Medical Services
1304 38th St.
San Diego, CA. 92104

Re: **Grievance, Unfair Labor Practices/Breach of Contract**

It has become apparent to the majority of our work force that the condition of our City Paramedic System has deteriorated beyond any levels experienced with prior San Diego City Paramedic contractors. Medical equipment continues to be in short supply, the dangerous mechanical status of our ambulances continue to cause rigs to go out-of-service for problems related to brakes, transmissions, sirens, bald tires, electrical systems, and crews continue to search for gas stations that have not discontinued their service to us due to late payments.

In addition, AMS has made a practice of violating our labor agreement by failing to fund key benefits. Most intolerable is the practice of taking money from employee wages designated for 401(k) and insurance and using it for Company purposes. The following is a list of the main sections of the contract that have been violated. Individual grievances are being filed separately.

---

1.  *"Sec. 2.08...Retirement System...All Employer and Employee contributions shall be made within sixty (60) days of each pay date. However the employer will make every effort to make fund transfers in thirty (30) days."*

    Since our labor agreement was signed in January of 1994, AMS has made a practice of flagrantly violating this section. At the time of this writing all accounts are delinquent by more than 5 months including employee contributions deducted from employee wages. In addition, money taken from employee wages to repay 401(k) loans are delinquent by more than 6 months. We reported this to the Department of Labor on January 16, 1995 (per our 12/6/94 letter), but the federal standards are more liberal (3 month grace period) than the ones in our Agreement. Therefore we will be taking stronger legal action in coming weeks if this problem is not immediately resolved.

2.  *"Sec. 2.01 Health Insurance...The Employer shall provide health insurance to each full-time employee..."*

    This week some of our members were denied health care unless they paid up front because, according to the Customer Service Manager at Great West (the plan administrator), "Your Company put the plan on hold" pending payment of previous health care bills. We were told that this is not the first time that AMS has done this.

*SDMA*   P.O. BOX 500142  San Diego, CA  92150-0142  (619) 689-9911

EXHIBIT *E*

FROM : San Diego Medic Associa'    PHONE NO. : 6196899911    Jan. 25 1995 10:50PM P03

Dan Lynch
Page 2

3.     *"Sec. 2.06...F. Pay-in-Lieu of Annual Leave....A maximum 100 annual leave credits may be cashed out at each six (6) month evaluation date.*

Several employees were told that they "will have to wait for awhile" before the Company can release the funds even though they submitted requests at the proper time per the labor Agreement.

4.     *"Sec. 2.04 Short Term Disability Insurance...The Employer shall make available to each full-time employee a short term disability insurance through a minimum "A" rated insurance company.*

We were informed last week by Colonial Insurance that AMS has not paid the premiums for the short-term disability insurance for more than a month. The intolerable thing about this is that, like the 401(k), money needed to pay this premium is deducted from employee wages.

---

<u>Suggested Remedy:</u>

Obviously, these are very serious breaches in our contract. They indicate long-term illegal financial practices that impact our members and their families and the trend is getting worse instead of better. We have no option left but to pursue legal action against the Company unless all 401(k) accounts, insurance premiums and annual leave requests are paid in full within the next week.

Sincerely:

Michael Meoli
SDMA President

cc:
Olins & Hayes
E-Board

EXHIBIT _E_

M : San Diego Medic Associ.    PHONE NO. : 6196899911    May. 04 1995 04:49PM P02

MAY 04 '95 09:46                                                P.2/2



**Medical Services**

May 3, 1995


Michael Neoli, President
San Diego Medic Association
P.O. Box 500142
San Diego, Ca. 92150-0142

Dear Mike,

I received your letter dated April 26, 1995 regarding our discussion at the Labor/Management meeting regarding 401(k).

In your letter under "Remedy" you incorrectly state that I "agreed" on two things, to bring accounts current with in 30 days and that all contributions will be remitted in chronological order. Although we did discuss these issues, I specifically recall advising you that I was not agreeing to your request but would address it to the ownership.

In addition, your letter also states that I "would request the owners to honor the following request:" which involved pay back interest in the amount of 6% for 401(k) contributions. Again, I remember clearly advising you that I did not agree to these requests, however, needed to seek direction from the ownership before making any commitments.

As of this time I have not spoken to the ownership regarding these issues since there are other more pressing matters. This does not mean that we feel this issue is not important. I have explained American's position and desire to keep the 401(k) with in the terms of our contract. I feel our actions over the past several weeks shows our commitment to bring the 401(k) current.

I hope this provides better understanding of our discussion. I appreciate your time.



Sincerely,

Daniel J. Lynch
General Manager


cc; Jim Kaufman

EXHIBIT _F_

1304 38th Street, San Diego, California 92105-5901 • (619) 527-3900 • FAX (619) 527-3900

# SAN DIEGO MEDIC ASSOCIATION

*"Dedicated to Complete Community Care"*

Dan Lynch, General Manager                                                                    May 6, 1995
American Medical Services
1304 38th St.
San Diego, CA. 92104

Dear Mr. Lynch:

I received your letter dated May 3, 1995 regarding the ongoing 401(k) delinquencies.

I was not incorrect in stating that you agreed on 4/25/95 that all 401(k) accounts should be brought within 30 days and remain there. It was actually redundant when you did agree to this as it is clearly stated in our contract that, *"the employer will make every effort to make fund transfers in thirty (30) days."* You also agreed that all contributions should be remitted in chronological order to avoid "mistakes". Both Mr. Pringle & Mr. Berry remember you agreeing to these things. To argue that you did not agree to this would seem to be dishonest as well as a clear indication that you have no intention of ever bringing the 401(k) current. Why do you continue to allow the Company to shirk the moral and legal obligation to make timely 40(k) contributions when most of the money comes out of the paramedic's bi-weekly paychecks? Why do you continue to make statements to the paramedics that the *"401(k) is paid up"* when it has never been within 60 days since we signed our contract?

You referred to your *"actions over the past several weeks...to bring the 401(k) current"*. I agree that it is closer to current than 6 months ago. However 6 months ago, you were floating the paramedics' money by half a year, more than $500,000 (!), doubling the federal labor law limits, more than tripling the limits of our contract....and with money that you deducted from employee pay-checks! It is well known that the main reason you have been starting to catch up is because the Department of Labor finally started investigating the Company in February.

In any case, by now you should have been notified by our attorney that we are requesting arbitration on this matter. In all likelihood, we will be requesting more than 6% in back interest for the weeks that the 401(k) has been delinquent. We also request that you allow us to tape record future labor/management meetings to assure accuracy in recounting discussions. Copies will be made available for the Company on request.

Sincerely,

Michael Meoli
President, SDMA

cc:
Olins & Hayes
E-board
Jim Kaufman

*SDMA*   P.O. BOX 500142  San Diego, CA  92150-0142  (619) 689-9911

EXHIBIT __G__

# OLINS, FOERSTER & HAYES

ATTORNEYS AT LAW
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

DOUGLAS F. OLINS, A.P.C.
BARRETT J. FOERSTER, A.P.C.
DENNIS J. HAYES
LAURA H. MILLER
JOHN C. ZUCCONI

2214 SECOND AVENUE
SAN DIEGO, CALIFORNIA 92101

TELEPHONE
(619) 238-1601
FACSIMILE
(619) 238-1613

May 8, 1995

**VIA FAX & U.S. MAIL**

Daniel Lynch
General Manager
American Medical Services
1304 38th Street
San Diego, CA 92104

Re: *Demand for Arbitration on 401(k) Plan*

Dear Mr. Lynch:

Please be advised that I am counsel for the San Diego Medic Association. On behalf of the Association, pursuant to the collective bargaining agreement, the Association hereby serves you with its written notice of its intent to appeal to arbitration the 401(k) grievance.

Please contact me as soon as possible but in any event not later than ten (10) working days to agree upon an impartial arbitrator to hear the grievance.

Thank you for your courtesy and cooperation.

Very truly yours,

DOUGLAS F. OLINS
Attorney at Law

DFO/mh
cc: San Diego Medic Assoc.

EXHIBIT H



Barrett Foerster, Esq.  Bar No. 46712

Olins, Foerster & Hayes

Attorneys at Law
2214 Second Avenue
San Diego, California 92101
Telephone: (619) 238-1601
Facsimile: (619) 238-1613

Attorneys For San Diego Medic Association

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO MEDIC ASSOCIATION )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERICAN MEDICAL SERVICES OF SAN )<br>DIEGO, INC., )<br><br>Defendant. )<br> ) | CASE NO. 96-1544-BTM (CM)<br><br>DECLARATION OF STEPHEN V.<br>PRICHARD |

I, Stephen Prichard, declare as follows:

1. Since December 23, 1996, I have been employed with the United States Department of Labor, Pension and Welfare Benefits Administration ("PWBA"), Los Angeles Area Office, as an auditor. I am also a certified public accountant licensed in the State of California. I have been in the accounting and finance field for over ten years, both in public practice for myself and for the accounting firm of KPMG Peat Marwick, and in private industry as a manager of finance and accounting. I make this declaration based upon information obtained in the course of PWBA's investigation of the American Medical Service of San Diego 401(k) Plan (the "Plan"). I could and would competently testify to the contents of this declaration if called upon to do so.

EXHIBIT _I_

1

2. One of the primary functions of the PWBA is to conduct investigations of employee benefit plans to determine if their operation and administration comply with the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1001, et seq.

3. In June 1996, the Los Angeles Regional Office of the PWBA commenced an investigation of the Plan. In the course of the investigation the Department learned that the Plan is a defined contribution pension plan established in 1993 by the Plan Sponsor, American Medical Services of San Diego ("AMS"), to provide retirement benefits to the employees of AMS and their beneficiaries.

4. In the course of the investigation the Department further learned that the Plan contracted with Great West Insurance and Annuity Company ("Great West") to provide certain custodial services including the forwarding of Plan assets to the appropriate investment fund, making Plan distributions and valuing the plan assets on a regular and periodic basis. In addition, the Department learned that on May 9, 1996, AMS and the San Diego Medic Association executed a new collective bargaining agreement covering the period from January 1, 1996, through December 31, 1997. The Department also learned that the May 1996, collective bargaining agreement required that all employee contributions and employer matching contributions be remitted to Great West no later than 30 days from the date of payroll.

5. During the course of PWBA's investigation, I reviewed and examined records and other documents relating to the Plan and Great West. Specifically, I examined: (a) AMS Distribution Reports reflecting employee withholdings and employer matching contributions to be made; (b) copies of canceled checks (front and back); (c)Great West Contribution Reports reflecting the forwarding of employee contributions and employer matching contributions from AMS; and (d) AMS Employee Payroll History Reports. Based upon both my experience as a PWA auditor, my experience as an accountant, and the nature of the documents examined, I am of the opinion and I do so declare that the records and documents examined by me during the course of the investigation upon which this declaration is predicated were made and created by or for the Plan, the Plan

EXHIBIT _I_

2

Sponsor and Great West as a regular practice in the course of their business activities and were kept and maintained by or for them in the course of their regularly conducted business activities. In addition, I do so declare that these records and documents were received directly from personnel of AMS and Great West.

6. During the course of PWBA's investigation, I prepared an analysis of the 401(k) contributions comprising both employee contributions and employer matching contributions. The analysis consisted of (a) Reviewing the Distribution Reports prepared by AMS, noting the total employee withholdings and required employer matching contributions, and the date of payroll; (b) On a test basis, tallying the total employee withholdings and required employer matching contributions to ascertain that the Distribution Reports were accurate. In addition, comparing on a test basis the Distribution Reports to the AMS Employee Payroll History Reports to determine that the Distribution Reports were complete; (c) Tracing the total employee contributions and employer matching contributions per the Distribution Reports to copies of canceled checks (when available) and records prepared by Great West reflecting receipt of contributions, noting the amount remitted and date paid; (d) Noting any amounts still owed after the employer remittance was made; and (e) Noting the number of days to fund the Plan and the number of days remittances were delinquent.

7. Attached hereto and incorporated herein by reference as though set forth in full as EXHIBIT "A" is my aforesaid analysis of 401(k) contributions which I prepared from records received directly from personnel of AMS and Great West.

8. Based upon the analysis performed, it was noted that the number of days employee contributions were delinquent ranged from a low of 2 days to a high of 163 days. The total amount of employer matching contributions still owed through the March 21, 1997, payroll date is approximately $404,000. In addition, it was noted that

///

///

///

///

EXHIBIT _I_

3

the total amount of employee contributions still owed through the March 21, 1997, payroll date is approximately $10,507.00. Some additional employee contributions which are not reflected in Exhibit "A" may have been made subsequent to its preparation.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct. Executed on _____April 30_____, 1997, at Los Angeles, California.

DATED:

_____
STEPHEN V. PRICHARD

EXHIBIT _1_

4

Case 3:97-cv-01222-BTM-LSP    Document 1    Filed 06/27/97    PageID.50    Page 50 of 55

# American Medical Services of San Diego, Inc.

## Analysis of 401(k) Contributions – Summary of Late Payments / Delinquency

For the period of Jan. 1, 1996 to Mar. 21, 1997

| Payroll Date | Employee Contributions | | | Employer Matching | | |
|---|---|---|---|---|---|---|
| | Amount Remitted | Days Delinquent | Amount Still Owing | Amount Remitted | Days Delinquent | Amount Still Owing |
| 05-Jan-96 | 15,271.92 | 18 | 0.00 | 0.00 | 448 | 8,992.66 |
| 12-Jan-96 | 7,940.74 | 16 | 0.00 | 597.32 | 441 | 4,810.11 |
| 19-Jan-96 | 15,824.54 | 10 | 0.00 | 0.00 | 434 | 9,081.75 |
| 26-Jan-96 | 7,624.47 | 2 | 0.00 | 598.23 | 427 | 4,567.87 |
| 31-Jan-96 | | | | | | |
| 02-Feb-96 | 15,175.99 | 4 | 0.00 | 0.00 | 420 | 8,920.54 |
| 09-Feb-96 | 7,546.41 | 2 | 0.00 | 559.53 | 413 | 4,569.64 |
| 16-Feb-96 | 14,507.19 | 2 | 0.00 | 0.00 | 406 | 8,280.59 |
| 23-Feb-96 | 8,413.53 | 4 | 0.00 | 479.05 | 399 | 5,500.48 |
| 29-Feb-96 | | | | | | |
| 01-Mar-96 | 12,961.07 | 10 | 0.00 | 0.00 | 392 | 7,457.77 |
| 08-Mar-96 | 8,310.20 | 11 | 0.00 | 0.00 | 385 | 5,331.79 |
| 15-Mar-96 | 14,078.94 | 24 | 0.00 | 0.00 | 378 | 8,592.33 |
| 22-Mar-96 | 6,770.06 | 163 | 0.00 | 575.11 | 371 | 4,235.73 |
| 22-Mar-96 | 686.96 | 127 | 0.00 | n/a | n/a | n/a |
| 29-Mar-96 | 14,432.87 | 108 | ·0.00 | 0.00 | 364 | 8,619.30 |
| 31-Mar-96 | | | | | | |
| 05-Apr-96 | 692.33 | 113 | 0.00 | 577.67 | 357 | 4,283.13 |
| 05-Apr-96 | 6,847.59 | 149 | 0.00 | n/a | n/a | n/a |
| 12-Apr-96 | 14,125.21 | 94 | 0.00 | 0.00 | 350 | 8,294.64 |
| 19-Apr-96 | 696.65 | 99 | 0.00 | 560.65 | 343 | 4,297.26 |
| 19-Apr-96 | 7,682.40 | 144 | 0.00 | 0.00 | n/a | 0.00 |
| 26-Apr-96 | 15,065.79 | 93 | 0.00 | 0.00 | 336 | 9,143.69 |
| 30-Apr-96 | | | | | | |
| 03-May-96 | 691.91 | 85 | 0.00 | 597.98 | 329 | 4,180.29 |
| 03-May-96 | 7,087.56 | 143 | 0.00 | n/a | n/a | n/a |
| 10-May-96 | 14,583.83 | 79 | 0.00 | 675.23 | 322 | 7,796.58 |
| 17-May-96 | 846.82 | 71 | 0.00 | 662.96 | 315 | 3,710.49 |

EXHIBIT A

EXHIBIT I

Case 3:97-cv-01222-BTM-LSP   Document 1   Filed 06/27/97   PageID.51   Page 51 of 55

# American Medical Services of San Diego, Inc.

## Analysis of 401(k) Contributions – Summary of Late Payments / Delinquency

For the period of Jan. 1, 1996 to Mar. 21, 1997

| | Employee Contributions | | | Employer Matching | | |
|---|---|---|---|---|---|---|
| Payroll Date | Amount Remitted | Days Delinquent | Amount Still Owing | Amount Remitted | Days Delinquent | Amount Still Owing |
| 17–May–96 | 6,147.09 | 129 | 0.00 | n/a | n/a | n/a |
| 24–May–96 | 14,993.48 | 73 | 0.00 | 0.00 | 308 | 8,853.96 |
| 31–May–96 | 692.95 | 57 | 0.00 | 580.50 | 301 | 3,631.61 |
| 31–May–96 | 5,747.15 | 115 | .0.00 | n/a | n/a | n/a |
| 31–May–96 | | | | | | |
| 07–Jun–96 | 14,177.89 | 59 | 0.00 | 0.00 | 294 | 8,534.23 |
| 14–Jun–96 | 843.21 | 43 | 0.00 | 654.80 | 287 | 4,113.01 |
| 14–Jun–96 | 6,562.88 | 101 | 0.00 | n/a | n/a | n/a |
| 21–Jun–96 | 14,259.53 | 79 | 0.00 | 0.00 | 280 | 8,345.34 |
| 28–Jun–96 | 758.21 | 29 | 0.00 | 583.92 | 273 | 4,007.18 |
| 28–Jun–96 | 6,317.52 | 95 | 0.00 | n/a | n/a | n/a |
| 30–Jun–96 | | | | | | |
| 05–Jul–96 | 16,468.02 | 66 | 0.00 | 0.00 | 266 | 10,208.73 |
| 12–Jul–96 | 729.82 | 42 | 0.00 | 0.00 | 259 | 5,645.41 |
| 12–Jul–96 | 8,209.38 | 98 | 0.00 | n/a | n/a | n/a |
| 19–Jul–96 | 17,063.61 | 52 | 0.00 | 0.00 | 252 | 10,197.28 |
| 26–Jul–96 | 633.27 | 28 | 0.00 | 1,166.85 | 245 | 4,064.22 |
| 26–Jul–96 | 7,719.44 | 84 | 0.00 | n/a | n/a | n/a |
| 31–Jul–96 | | | | | | |
| 02–Aug–96 | 15,878.06 | 43 | 0.00 | 0.00 | 238 | 9,636.27 |
| 09–Aug–96 | 906.71 | 64 | 0.00 | 0.00 | 231 | 5,260.89 |
| 09–Aug–96 | 7,325.68 | 70 | 0.00 | n/a | n/a | n/a |
| 16–Aug–96 | 15,462.32 | 42 | 0.00 | 0.00 | 224 | 9,287.39 |
| 23–Aug–96 | 908.91 | 50 | 0.00 | 1,374.25 | 217 | 3,573.21 |
| 23–Aug–96 | 6,937.79 | 61 | 0.00 | n/a | n/a | n/a |
| 30–Aug–96 | 15,‸23.03 | 29 | 0.00 | 0.00 | 210 | 9,546.95 |
| 31–Aug–96 | | | | | | |
| 06–Sep–96 | 794.45 | 39 | 0.00 | 532.99 | 203 | 4,394.26 |

EXHIBIT A to EXHIBIT 1

Case 3:97-cv-01222-BTM-LSP    Document 1    Filed 06/27/97    PageID.52    Page 52 of 55

# American Medical Services of San Diego, Inc.

## Analysis of 401(k) Contributions – Summary of Late Payments / Delinquency

For the period of Jan. 1, 1996 to Mar. 21, 1997

| Payroll Date | Employee Contributions Amount Remitted | Days Delinquent | Amount Still Owing | Employer Matching Amount Remitted | Days Delinquent | Amount Still Owing |
|---|---|---|---|---|---|---|
| 06–Sep–96 | 7,177.84 | 47 | 0.00 | n/a | n/a | n/a |
| 13–Sep–96 | 14,526.82 | 17 | 0.00 | 0.00 | 196 | 8,947.76 |
| 20–Sep–96 | 754.53 | 25 | 0.00 | 519.39 | 189 | 3,828.10 |
| 20–Sep–96 | 6,265.88 | 73 | 0.00 | n/a | n/a | n/a |
| 27–Sep–96 | 13,521.51 | 3 | 0.00 | 0.00 | 182 | 8,187.93 |
| 30–Sep–96 | | | | | | |
| 04–Oct–96 | 5,451.14 | 175 | 614.05 | 0.00 | 175 | 3,882.62 |
| 11–Oct–96 | 14,876.83 | 7 | 0.00 | 0.00 | 168 | 9,191.67 |
| 18–Oct–96 | 5,768.66 | 161 | 796.72 | 0.00 | 161 | 4,135.22 |
| 25–Oct–96 | 14,812.83 | 32 | 0.00 | 0.00 | 154 | 8,877.97 |
| 31–Oct–96 | | | | | | |
| 31–Oct–96 | | | | | | |
| 01–Nov–96 | 5,006.86 | 147 | 755.43 | 0.00 | 147 | 3,625.35 |
| 08–Nov–96 | 13,734.83 | 43 | 0.00 | 0.00 | 140 | 8,547.21 |
| 15–Nov–96 | 5,188.90 | 133 | 774.62 | 0.00 | 133 | 3,759.91 |
| 22–Nov–96 | 13,074.07 | 70 | 0.00 | 0.00 | 126 | 8,049.71 |
| 29–Nov–96 | 5,472.03 | 119 | 724.14 | 0.00 | 119 | 3,924.55 |
| 30–Nov–96 | | | | | | |
| 06–Dec–96 | 12,654.37 | 56 | 0.00 | 0.00 | 112 | 7,857.53 |
| 13–Dec–96 | 5,570.64 | 105 | 760.13 | 0.00 | 105 | 3,926.08 |
| 20–Dec–96 | 13,370.77 | 42 | 0.00 | 0.00 | 98 | 8,368.68 |
| 27–Dec–96 | 5,069.89 | 91 | 737.35 | 0.00 | 91 | 3,536.85 |
| 31–Dec–96 | | | | | | |
| 03–Jan–97 | 12,962.17 | 28 | 0.00 | 0.00 | 84 | 8,046.61 |
| 10–Jan–97 | 721.79 | 21 | 0.00 | 450.20 | 77 | 3,824.12 |
| 10–Jan–97 | 5,900.01 | 44 | 0.00 | n/a | n/a | n/a |
| 17–Jan–97 | 12,482.88 | 70 | 0.00 | 0.00 | 70 | 7,904.28 |
| 24–Jan–97 | 713.83 | 7 | 0.00 | 457.99 | 63 | 3,212.17 |

EXHIBIT A to EXHIBIT 1

# American Medical Services of San Diego, Inc.
## Analysis of 401(k) Contributions – Summary of Late Payments / Delinquency
For the period of Jan. 1, 1996 to Mar. 21, 1997

| | Employee Contributions | | | Employer Matching | | |
|---|---|---|---|---|---|---|
| Payroll Date | Amount Remitted | Days Delinquent | Amount Still Owing | Amount Remitted | Days Delinquent | Amount Still Owing |
| 24-Jan-97 | 4,829.14 | 11 | 0.00 | n/a | n/a | n/a |
| 31-Jan-97 | 11,271.14 | 56 | 0.00 | 0.00 | 56 | 7,152.88 |
| 31-Jan-97 | | | | | | |
| 07-Feb-97 | 5,419.47 | 49 | 0.00 | 0.00 | 49 | 3,616.34 |
| 14-Feb-97 | 11,788.88 | 42 | 0.00 | 0.00 | 42 | 7,538.12 |
| 21-Feb-97 | 5,426.88 | 35 | 0.00 | 0.00 | 35 | 3,620.01 |
| 28-Feb-97 | 11,628.20 | 28 | 0.00 | 0.00 | 28 | 7,304.06 |
| 07-Mar-97 | 4,954.12 | 3 | 0.00 | 0.00 | 21 | 3,217.28 |
| 14-Mar-97 | 10,534.56 | 3 | 0.00 | 0.00 | 14 | 6,484.37 |
| 21-Mar-97 | | n/a | 5,345.38 | 0.00 | 7 | 3,525.48 |
| | 664,056.85 | | 10,507.82 | 12,204.62 | | 404,059.44 |

EXHIBIT A  to  EXHIBIT 1

28-Apr-97

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO MEDIC ASSOCIATION, an
employee labor organization, and
MIKE MEOLI, an individual

vs

AMERICAN MEDICAL SERVICE OF SAN DIEGO
401(K) PLAN; AMERICAN MEDICAL SERVICE
OF SAN DIEGO, a limited partnership;
STANLEY KAUFMAN, an individual; DAN LYNCH,
an individual; JAMES KAUFMAN, an individual;
JAMES BOSCOS, an individual; ERNIE BOSCOS,
an individual; JAMES NAEFFEY, an individual;
KAUFMAN/WARD SERVICE, INC., a California
corporation; FOX & FOX, a California corpo-
ration and DOES 1 through 100, inclusive.

**SUMMONS IN A CIVIL ACTION**

Case No.

'97 CV 1222 E   (RBB)

TO: (Name and Address of Defendant)

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon PLAINTIFF'S ATTORNEY

An answer to the complaint which is herewith served upon you, within _____80_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| Roberta Westdal | JUN 2 7 1997 |
|---|---|
| CLERK | DATE |
| RO-ANN BRESSI | |
| Deputy Clerk | |

AO 440 (Rev 5/85) Summons in a Civil Action

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

SAN DIEGO MEDIC ASSOCIATION
MEOLI, MIKE

## DEFENDANTS

AMERICAN MEDICAL SERVICE OF SAN DIEGO 401(K) PLAN
AMERICAN MEDICAL SERVICE OF SAN DIEGO
KAUFMAN, STANLEY        NAEFFEY, JAMES
LYNCH, DAN
KAUFMAN, JAMES          KAUFMAN/WARD SERVICE,
BOSCOS, JAMES                    INC.
BOSCOS, ERNIE           FOX & FOX

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT San Diego
(IN U.S. PLAINTIFF CASES ONLY)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Judith Malone Finch, Esq.
Law Offices of Judith M. Finch
402 West Broadway; Suite 2500
San Diego, CA 92101

ATTORNEYS (IF KNOWN)

FILED
JUN 27 1997
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT
BY

'97 CV 1222 E (RBB)

## II. BASIS OF JURISDICTION

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY

Complaint for Declaratory Relief, 29 U.S.C. Section 1132(a)(1)(B)[ERISA Section 502(a)(1)(B)]; Breach of Fiduciary Duty, 29 U.S.C. Sections 1104,1105(a), 1109(a) [ERISA Sections 404,405(a)and 409(a); Demand for Accounting

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE BTM CM          DOCKET NUMBER 960544

DATE
June 27, 1997

SIGNATURE OF ATTORNEY OF RECORD
_Judith M. Finch_
Judith M. Finch

UNITED STATES DISTRICT COURT

# 3/110 PR